1  Sebastian L. Miller (SBN 265793)
   sebastian@sebastianmillerlaw.com
2  SEBASTIAN MILLER LAW, P.C.
   900 Lafayette Street, Suite 201
3  Santa Clara, CA 95050
   Telephone:  408.348.1728
4  Facsimile:   408.716.3149

5  Attorneys for Plaintiffs ANNETTE BRUCE, BRYAN
   AUSTIN, DEREK STEWART, FRANK GONZALES,
6  MIGUEL HERRERA, AND RAYMOND RAYA

7

8                **UNITED STATES DISTRICT COURT**

9                **NORTHERN DISTRICT OF CALIFORNIA**

10

11  ANNETTE BRUCE, BRYAN AUSTIN,              **Case No.: 16-cv-5891**
    DEREK STEWART, FRANK GONZALES,
12  MIGUEL HERRERA, AND RAYMOND               **COMPLAINT FOR DAMAGES,**
    RAYA, on behalf of themselves and others  **PENALTIES AND INJUNCTIVE RELIEF**
13  similarly situated as well as on behalf of the
    State of California and other aggrieved    **CLASS ACTION, COLLECTIVE**
    employees in a representative capacity,    **ACTION, REPRESENTATIVE ACTION**
14
                    Plaintiffs,                 1.  Disparate Impact Age Discrimination
15                                                  (29 U.S.C. § 623(a) / 29 U.S.C. §
              v.                                    626(b) / 29 U.S.C. § 216(b))
16
    DEL MONTE FOODS, INC.,                      2.  Disparate Impact Age Discrimination
17                                                  (Cal. Gov. Code § 12940(a) / Cal.
                    Defendant.                      Gov. Code § 12961 / FRCP 23)
18
                                               3.  Disparate Impact Disability
19                                                 Discrimination (Cal. Gov. Code §
                                                   12940(a) / Cal. Gov. Code § 12961
20                                                 /FRCP 23)

21                                             4.  Failing To Take All Reasonable Steps
                                                   To Prevent Age And Disability
22                                                 Discrimination (Cal. Gov. Code §
                                                   12940(a) / Cal. Gov. Code § 12961 /
23                                                 FRCP 23)

24                                             5.  Representative Action Seeking
                                                   Penalties Under PAGA
25
                                               **JURY TRIAL DEMANDED**
26

---

                                  1

## I.    **INTRODUCTION**

1.      Defendant Del Monte Foods has a policy that requires most hourly employees at its tomato processing plant in Hanford, California to work one or more daily shifts during each and every day of an annual processing season.  This processing season lasts for between four and six months of each calendar year.  The requirement that employees work for 100+ consecutive days constitutes age and disability discrimination because it has a disparate, adverse impact on employees who are over the age of forty and employees who have physical impairments.  The policy also violates the California Labor Code which prohibits an employer from causing its employees to work more than six days in seven.

## II.   **SUMMARY OF FACTUAL AND LEGAL CLAIMS AND RELIEF SOUGHT**

2.      This complaint alleges violations of the Age Discrimination in Employment Act of 1967 (the "ADEA") and the California Fair Employment and Housing Act ("FEHA").  Those violations are alleged on behalf of the named plaintiffs and on behalf of two groups of employees who have been affected in a similar manner by the unlawful practices at issue.  Specifically, employees who are over the age of forty and employees who are disabled.  The complaint also alleges violations of the Private Attorneys General Act of 2004, Labor Code §§ 2698 *et seq.* ("PAGA") on behalf of the named plaintiffs and other aggrieved employees.

3.      Named plaintiffs Annette Bruce, Bryan Austin, Derek Stewart, Frank Gonzales, Miguel Herrera, and Raymond Raya ("Plaintiffs") seek to secure damages and injunctive relief related to harms they have experienced and continue to experience as a result of certain facially-neutral attendance policies maintained by Defendant Del Monte Foods, Inc. ("Del Monte" or "Defendant").  The policies at issue are applied uniformly to most of the hourly employees who work at Del Monte's tomato processing plant in Hanford, California (Plant # 24 – 10652 Jackson Avenue, Hanford, CA 93230) (the "Plant").  All of the named Plaintiffs are currently employed at the Plant and all of them have worked at the Plant for many years, if not decades.

4.      The attendance policies at issue require employees at the Plant to work seven days per

CLASS ACTION COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF RELATED TO
VIOLATIONS OF THE ADEA AND FEHA; REPRESENTATIVE ACTION UNDER PAGA

week for approximately four to six months out of the year. They rarely, if ever, receive a scheduled day off from work and are often required to work "double-back" and "triple-back" shifts[1] (the policies at issue are referred to as the "In-Season Attendance Policies" with that term being as defined below.) Plaintiffs contend that the In-Season Attendance Policies have a disparate, adverse impact on employees who have physical impairments and employees who are over the age of forty years old. On that basis, Plaintiffs allege that the In-Season Attendance Policies constitute discriminatory practices that affect their terms, conditions, or privileges of employment in violation of the ADEA and FEHA (29 U.S.C. § 623(a)(1) and Gov. Code § 12940(a)).

5.   The In-Season Attendance Policies affect two groups and/or classes of employees in a similar manner and the individuals within each of those groups are all similarly-situated to the Plaintiffs. Accordingly, this Complaint is brought as a collective action under the ADEA (29 U.S.C. § 626(b) / 29 U.S.C. § 216(b)) with respect to workers at the Plant who are over the age of forty. It is also brought as a class action under FEHA (Gov. Code § 12961 / Federal Rule of Civil Procedure ("FRCP") 23) with respect to both workers at the Plant who are over the age of forty and those who have physical impairments that rise to the level of disabilities under FEHA.

6.   Plaintiffs' collective action under the ADEA is brought on behalf of all employees at the Plant who are over the age of forty and have been subject to the In-Season Attendance Policies ("the ADEA Class" as defined below). Plaintiffs' class action under FEHA is brought on behalf of two sub-classes: (i) all employees at the Plant who are over the age of forty and have been subject to the In-Season Attendance Policies (the "FEHA Age Sub-Class" as defined below); and (ii) all

---

[1] A double-back or triple-back shift refers to the amount of time off that an employee receives between his or her eight and a half hour shifts at the Plant. For about four to six months of the year the Plant runs twenty-four hours per day. During this time, employees may work one of three daily shifts: 6:00 a.m. to 2:30 p.m. (first shift), 2:00 p.m. to 10:30 p.m. (second shift), or 10:00 p.m. to 6:30 a.m. (third shift). A "double back" refers to receiving only one shift off in a given twenty-four-hour period (*e.g.* working the first shift in the morning and then working the third shift in the evening or working the second shift in the afternoon and then working the first shift starting at 6:00 a.m. the following morning). A "triple back" refers to working three shifts in a forty or forty-eight-hour period (*e.g.* working the first shift in the morning, then working the third shift in the evening and then working the second or third shift on the following day).

CLASS ACTION COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF RELATED TO
VIOLATIONS OF THE ADEA AND FEHA; REPRESENTATIVE ACTION UNDER PAGA

employees at the Plant who have physical impairments that FEHA recognizes as a disability (the "FEHA Disability Sub-Class" as defined below and, together with the FEHA Age Sub-Class, the "FEHA Class").

7.     Further, Plaintiffs allege a separate violation of FEHA that relates to Del Monte's failure to take the reasonable steps necessary to prevent discrimination from occurring.  Plaintiffs contend that Del Monte has known and should have known that its continued application of the In-Season Attendance Policies has a disproportionate and adverse effect on older and disabled workers. Del Monte's refusal to change the In-Season Attendance Policies despite this knowledge violated Gov. Code § 12940(k).

8.     Plaintiffs seek to secure damages for themselves as well as for members of the ADEA Class and the FEHA Class.  Perhaps more importantly, Plaintiffs seek injunctive relief that prevents Del Monte from continuing to apply the In-Season Attendance Policies to members of the ADEA Class and the FEHA Class.

9.     Finally, in addition to their causes of action under the ADEA and FEHA, Plaintiffs—acting in a representative capacity on behalf of the State of California and more than one thousand non-party aggrieved employees—seek to recover penalties under PAGA.  The PAGA violations stem exclusively from Del Monte's application of the In-Season Attendance Policies, which deprive employees at the Plant of their statutory day of rest.  The In-Season Attendance Policies cause Del Monte to violate Labor Code §§ 551, 552, 553, 558, 1198, and 1199.  These PAGA violations occur at the Plant for four to six months of the year and affect about one thousand hourly employees, all of whom are paid on a weekly basis.  All employees at the Plant who are subject to the In-Season Attendance Policies, not just those who are disabled under FEHA or over the age of forty, constitute aggrieved employees under PAGA.  Plaintiffs' PAGA claim seeks to recover from Del Monte the penalty set forth in Labor Code § 2699(f)(2) with respect to violations of each of Labor Code §§ 551, 552, 553, 558, 1198, and 1199.  They seek this penalty for each pay period of the "Season" (as defined below) that falls within the PAGA statute of limitations period.

III.   **PARTIES**

10.     Plaintiff Annette Bruce is a resident of Hanford, California.  She has been employed by Del Monte at the Plant for decades.  Ms. Bruce is fifty-seven years old and is disabled with the following physical impairments that limit many of her major life activities: rheumatoid arthritis and problems with her sciatic nerve.  Ms. Bruce received a notice of right to sue from the California Department of Fair Employment and Housing ("DFEH") relating to disability and age discrimination and other matters alleged herein on August 22, 2016.  The United States Equal Employment Opportunity Commission ("EEOC") issued her a notice of right to sue related to age discrimination on October 7, 2016.

11.     Plaintiff Bryan Austin is a resident of Visalia, California.  He has been employed by Del Monte at the Plant for decades.  Mr. Austin is fifty years old and is disabled with the following physical impairments that limit many of his major life activities: diabetes and chronic joint/nerve pain.  Mr. Austin received a notice of right to sue from the DFEH relating to disability and age discrimination and other matters alleged herein on August 6, 2016.  The EEOC issued him a notice of right to sue related to age discrimination on October 7, 2016.

12.     Plaintiff Derek Stewart is a resident of Tulare, California.  He has been employed by Del Monte at the Plant for decades.  Mr. Stewart is fifty-two years old and is disabled with the following physical impairment that limits many of his major life activities: chronic pain.  Mr. Stewart received a notice of right to sue from the DFEH relating to disability and age discrimination and other matters alleged herein on August 11, 2016.  The EEOC issued him a notice of right to sue related to age discrimination on October 7, 2016.

13.     Plaintiff Frank Gonzales is a resident of Hanford, California.  He has been employed by Del Monte at the Plant for decades.  Mr. Gonzales is fifty-eight years old and is disabled with the following physical impairments that limit many of his major life activities: diabetes and high blood pressure.  Mr. Gonzales received a notice of right to sue from the DFEH relating to disability and age discrimination and other matters alleged herein on August 11, 2016.  The EEOC issued him a notice

CLASS ACTION COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF RELATED TO
VIOLATIONS OF THE ADEA AND FEHA; REPRESENTATIVE ACTION UNDER PAGA

of right to sue related to age discrimination on October 7, 2016.

14.     Plaintiff Miguel Herrera is a resident of Lemoore, California.  He has been employed by Del Monte at the Plant for many years.  Mr. Herrera is forty-one years old and is disabled with the following physical impairments that limit many of his major life activities: back injuries.  Mr. Herrera received a notice of right to sue from the DFEH relating to disability and age discrimination and other matters alleged herein on August 6, 2016.  The EEOC issued him a notice of right to sue related to age discrimination on October 7, 2016.

15.     Plaintiff Raymond Raya is a resident of Lemoore, California.  He has been employed by Del Monte at the Plant for decades.  Mr. Raya is forty-five years old and is disabled with the following physical impairments that limit many of his major life activities: lumps and spots on his lungs that hinder his breathing.  Mr. Raya received a notice of right to sue from the DFEH relating to disability and age discrimination and other matters alleged herein on August 6, 2016.  The EEOC issued him a notice of right to sue related to age discrimination on October 7, 2016.

16.     Del Monte currently employs more than one thousand employees at the Plant and many more employees throughout the State of California.  It is a covered employer under the ADEA, FEHA and PAGA.  Del Monte is a Delaware Corporation but it is a resident of the State of California because its corporate headquarters and nerve center is located in Walnut Creek, California (Alameda County), which is within this judicial district.  In addition, representatives from Del Monte's corporate offices in Alameda County were responsible for negotiating, developing and implementing the In-Season Attendance Policies and they did so largely from Alameda County.  Further, many of the records relevant to Del Monte's unlawful practice of applying the In-Season Attendance Policies to the Plaintiffs and the class members are maintained and administered in Alameda County.

17.     Del Monte's In-Season Attendance Policies are unlawful under the ADEA and adversely affect employees at the Plant who are over the age of forty in a similar manner.  Each of the named Plaintiffs is over the age of forty, has been subject to and harmed by the In-Season Attendance Policies at the Plant and has received a notice of right to sue from the EEOC that informed the EEOC

CLASS ACTION COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF RELATED TO
VIOLATIONS OF THE ADEA AND FEHA; REPRESENTATIVE ACTION UNDER PAGA

1   of such Plaintiff's intention to bring this complaint on a class-wide basis.  Plaintiffs file this

2   Complaint on behalf of and as representatives of other employees who are over the age of forty

3   pursuant to 29 U.S.C. § 626(b) and 29 U.S.C. § 216(b).

4         18.     Del Monte's In-Season Attendance Policies are unlawful under FEHA and adversely

5   affect two groups and/or classes of Del Monte employees in a similar manner—employees who are

6   over forty and employees who are disabled with physical impairments.  Each of the named Plaintiffs

7   belongs to both of these groups, has been subject to and harmed by the In-Season Attendance Policies

8   at the Plant and has received a notice of right to sue from the DFEH that informed the DFEH of such

9   Plaintiff's intention to bring this complaint on a class-wide basis.  Plaintiffs file this complaint on

10   behalf of and as a representative of these groups pursuant to Gov. Code § 12961 and FRCP 23.

11         19.     Del Monte's In-Season Attendance Policies caused it to violate Labor Code §§ 551,

12   552, 553, 558, 1198, and 1199 with respect to nearly all employees at the Plant throughout the

13   duration of the "Season" (as defined below).  These In-Season Attendance Policies adversely affected

14   all of the Plaintiffs as well as many other employees at the Plant who were not provided with the days

15   of rest that Labor Code §§ 551-552 required that they receive.  These other individuals are "aggrieved

16   employees" on whose behalf Plaintiffs bring this representative action for PAGA penalties under

17   Labor Code §§ 2698 *et seq*.

18   **IV.**    **<u>JURISDICTION</u>**

19         20.     Plaintiffs' first cause of action alleges violations of the ADEA.  The ADEA is a

20   federal law and, therefore, this Court has original jurisdiction over Plaintiffs' first cause of action for

21   violation of the ADEA pursuant to 28 U.S.C. § 1331.  Plaintiffs' remaining causes of action allege

22   violations of two California state laws—FEHA and PAGA.  The alleged violations of FEHA and

23   PAGA, however, arise out of Del Monte's application of the In-Season Attendance Policies at the

24   Plant.  Application of the In-Season Attendance Policies constitutes the very same or substantially

25   similar conduct to the conduct that Plaintiffs allege violates the ADEA.  Accordingly, Plaintiffs'

26   California state law claims are part of the same case and controversy as Plaintiffs' claims under the

CLASS ACTION COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF RELATED TO
VIOLATIONS OF THE ADEA AND FEHA; REPRESENTATIVE ACTION UNDER PAGA

ADEA.  Thus, this Court possesses supplemental jurisdiction over Plaintiffs' second through fifth causes of action pursuant to 28 U.S.C. § 1367.

**V.     VENUE**

21.     Venue is proper in the United States District Court for the Northern District of California pursuant to 28 U.S.C. § 1391(b)(1) and 28 U.S.C. § 1391(b)(2), both of which apply to Plaintiffs' first cause of action for violation of the ADEA.  Del Monte resides in the Northern District of California pursuant to 28 U.S.C. § 1391(c)(2) and 28 U.S.C. § 1391(d).  Del Monte's corporate headquarters/nerve center is located in the Northern District of California and Del Monte's contacts with this judicial district would subject it to personal jurisdiction if this judicial district were a separate state.  Further, many decisions regarding the development and application of the In-Season Attendance Policies to employees the Plant were made in Alameda County and many records relating to those policies and their effects are located in Alameda County.  The employees at Del Monte who have had and continue to have the authority to change the In-Season Attendance Policies all work in Alameda County.  Thus, a substantial part of the events or omissions that give rise to Plaintiffs' ADEA claim occurred in the Northern District of California.  Venue of Plaintiffs' state law claims is proper in this judicial district pursuant to 28 U.S.C. § 1391(b)(1) because, as set forth above, Del Monte resides in this judicial district.  Venue is also proper under 28 U.S.C. § 1391(b)(2) because Plaintiffs' FEHA and PAGA claims relate to Del Monte's development and application of the In-Season Attendance Policies as well as the effects those policies have and Del Monte's current refusal to adopt alternative policies.  A substantial part of those events and omissions occurred in this judicial district.

**VI.     INTRA-DISTRICT ASSIGNMENT**

22.     Pursuant to Civil L.R. 3-2(d), this action should be assigned to either the San Francisco Division or the Oakland Division of the United States District Court for the Northern District of California because a substantial part of the events or omissions which give rise to the claims alleged herein occurred in Alameda County.

CLASS ACTION COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF RELATED TO VIOLATIONS OF THE ADEA AND FEHA; REPRESENTATIVE ACTION UNDER PAGA

## VII.   THE PLAINTIFFS HAVE EXHAUSTED THEIR ADMINISTRATIVE REMEDIES

23.     Each of the Plaintiffs, through his or her counsel, filed a verified complaint with the DFEH pursuant to Gov. Code §§ 12960 *et seq*. Each of the Plaintiffs' complaints alleged that the In-Season Attendance Policies constituted employment practices that had a disparate, adverse impact on older and/or disabled workers. Each Plaintiff requested and received an immediate notice of right to sue from the DFEH. The DFEH issued these notices of right to sue between August 6, 2016 and August 22, 2016. In addition, each Plaintiff filed a charge of discrimination with the EEOC on or about September 30, 2016. The charges of discrimination filed with the EEOC were largely identical to the charges filed with the DFEH. The EEOC issued each Plaintiff a notice of right to sue under the ADEA on or about October 7, 2016. Each of the Plaintiffs were adversely affected by the In-Season Attendance Policies within the one-year prior to the date that the applicable notice of right to sue was issued and each remains employed at the Plant and continues to be harmed by the In-Season Attendance Policies to this day. Thus, Plaintiffs timely exhausted their administrative remedies under FEHA and the ADEA. All of the charges of discrimination were intended to and do in fact encompass all adverse employment actions that Plaintiffs and others similarly situated experienced as a result of the In-Season Attendance Policies. Plaintiffs commenced this action within ninety days after receiving notices of right to sue from the DFEH and the EEOC. Thus, Plaintiffs timely filed this Complaint following exhaustion of their administrative remedies.

24.     Plaintiffs gave notice to Del Monte and the California Labor and Workforce Development Agency ("LWDA") of their position that the In-Season Attendance Policies caused Del Monte to violate Labor Code § 551, 552, 553, 558, 1198, and 1199 on a weekly basis. They provided this notice to Del Monte in a letter sent via certified mail and with a postmark date of August 6, 2016. They provided notice to the LWDA in an email sent to the LWDA (PAGAfilings@dir.ca.gov) on August 6, 2016. Plaintiffs also paid a statutory filing fee of $75 to the LWDA and the LWDA cashed Plaintiffs' check. Sixty-five days have passed since Plaintiffs delivered notice to Del Monte and the LWDA of the alleged PAGA violations. Plaintiffs have not been informed that the LWDA intends to

investigate any of the violations, nor have they been informed that Del Monte has or intends to correct them.  Thus, Plaintiffs have exhausted all administrative requirements and pre-suit procedures set forth in Labor Code § 2699.3 and may now bring this action on a representative basis under PAGA, seeking penalties with respect to themselves and the other aggrieved employees.

## VIII.   THE PLANT, ITS EMPLOYEES, THEIR UNION, THE SEASON AND THE "IN-SEASON ATTENDANCE POLICIES"

25.     The Plant engages in the processing of tomato products.  Due to the nature of this work, the Plant is subject to Order No. 3-2001 of the California Industrial Welfare Commission ("Wage Order 3").  Wage Order 3 regulates wages, hours and working conditions for employees who work in the canning, freezing and preserving industry and states the following.  Labor Code §§ 551-552 apply to employees who work for employers in positions that are covered by Wage Order 3 unless a valid collective bargaining agreement "expressly provides otherwise."

26.     Many of the employees at the Plant, including the Plaintiffs, are represented by Teamsters Local No. 948 ("Local 948").  At relevant times, Local No. 948 and Del Monte have been parties to various collective bargaining agreements ("CBAs").  The most recent CBA was signed by Local 948 and Del Monte on June 29, 2015.  It became effective on July 1, 2015 (the "2015 CBA").  Neither the 2015 CBA nor the CBA that was in effect immediately prior to the 2015 CBA expressly provides that Labor Code §§ 551-552 do not apply to employees at the Plant.  Rather, the relevant CBAs have been silent on the subject.  In addition, the 2015 CBA states that "all miscellaneous documents such as Letters of Understanding, Letters of Agreement, Memorandum, Supplemental Agreements, etc., clarifying this Agreement or relating to past practices shall be provided to the Company by the Union and compiled into one Letter confirming final disposition of such documents."  The same section of the 2015 CBA goes on to say that "Any such document not identified and compiled in such Letter shall be null and void."  The CBA the parties entered into in 2012 contained similar language.  Thus, even if Del Monte and Local 948 previously entered into a letter of understanding that provided Labor Code §§ 551-552 do not apply to employees at the Plant,

that prior letter of understanding has been superseded by the 2015 CBA and prior CBAs.  Further,

any such letter of understanding was never effective to exempt the Plant from the effect of Labor

Code §§ 551-552 because it was never included in a valid collective bargaining agreement.

27.     Del Monte ensures that the Plant is a very busy place during the "fresh pack" part of

the tomato season—roughly June 1st through November 15th of each calendar year (the "Season").

During the Season, tomatoes are harvested and brought the Plant to be freshly packed and canned.

Del Monte chooses to operate the Plant twenty-four hours a day during the Season and it runs three

different shifts during that time.  Virtually all non-managerial employees at the Plant—including the

Plaintiffs—are required to work seven days per week for the duration of the Season.  This

requirement comes about because Del Monte chooses to schedule them to work every single day,

with relatively few and infrequent exceptions.  Consequently, most employees at the Plant—

including the Plaintiffs—are scheduled to go into work for more than one-hundred consecutive days

during the Season.  They do not receive a single, scheduled day off during that long period of time.

28.     With the exception of a handful of managers and administrators, all the remaining

employees at the Plant can be classified into two categories depending on their work schedule.  The

first category is "1400-hour Employees."  They work year-round (*i.e.* for 1400 hours or more).  The

second category is "Seasonal Employees."  They only work at the Plant during the Season (*i.e.* for

about half the year) and are discharged at the end of each Season and re-hired anew at the beginning

of the next Season.

29.     All of the named Plaintiffs except Miguel Herrera are 1400-hour Employees.  Mr.

Herrera is a Seasonal Employee.  For purposes of this lawsuit, however, the distinction between

Seasonal Employees and 1400-hour Employees is not critical because the In-Season Attendance

Policies harm 1400-hour Employees and Seasonal Employees in substantially the same respects.

30.     Employees at the Plant are currently subject to a variety of rules and procedures that

have been in effect at all times since August 6, 2015 (one year prior to the PAGA notice and the date

the DFEH issued notices of right to sue to some of the Plaintiffs) as well as for many years prior to

CLASS ACTION COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF RELATED TO
VIOLATIONS OF THE ADEA AND FEHA; REPRESENTATIVE ACTION UNDER PAGA

that date.  As is relevant here, those rules are set forth in an employee handbook, certain house rules, an attendance policy, and the 2015 CBA (together, the "Regulations").  Employees who do not comply with the provisions in the Regulations that concern attendance at work are subject to swift discipline, beginning with disciplinary write-ups and continuing to the suspension and termination of their employment.

31.    The attendance policies in the Regulations vary slightly depending on whether an employee is a 1400-hour Employee or a Seasonal Employee.  Under the Regulations, 1400-hour Employees are involuntarily discharged from employment for attendance violations if they receive fourteen "points" over the course of their employment with Del Monte whereas Seasonal Employees are involuntarily discharged from employment for attendance violations if they receive four "points" during a given Season.  Each employee begins their employment with Del Monte at zero points.  Seasonal Employees see their total number of points "reset" to zero at the beginning of each Season.  1400-hour Employees carry their point totals over from Season to Season and year to year; there are no opportunities for them to "reset" their point totals to zero.

32.    Del Monte posts work schedules at the Plant that list which employees are scheduled to work on a particular day.  These schedules are often posted with fewer than twenty-four hours' notice to the employees.  The Regulations state that employees are expected to call in or physically come to the Plant in order to confirm whether they are scheduled to work.  If an employee's number is posted on the schedule, then that employee is expected to be at work as scheduled.  With certain, limited exceptions, a point is applied each time an employee is absent from work on a day that the employee was scheduled to work.

33.    During the Season, most 1400-hour Employees and most Seasonal Employees are scheduled to work every single day of the week.  This seven-day per week schedule persists for every week of the Season.  In other words, substantially all 1400-hour Employees and substantially all Seasonal Employees at the Plant are scheduled to work for one hundred days in a row or more during the Season.

CLASS ACTION COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF RELATED TO VIOLATIONS OF THE ADEA AND FEHA; REPRESENTATIVE ACTION UNDER PAGA

34.     Consequently, a Seasonal Employee who attempts to take a total of four days off from work during the Season will be fired.  A suspension from employment will occur after three days off.  Similarly, a 1400-hour Employee who attempts to take between one and fourteen days off from work during the Season will be fired, depending on how many points such 1400-hour Employee had at the beginning of the Season.  1400-hour Employees may also be suspended and receive other forms of discipline if they receive fewer than 14 points.

35.     Although 1400-hour Employees are theoretically entitled to take an approved vacation during the Season, they are dissuaded from requesting vacation days during the Season and if vacation requests are made during the Season they are often denied by Del Monte's human resources department.  In addition, Seasonal Employees like Miguel Herrera do not even receive vacation days that they may use during the Season.  Thus, to the extent the Regulations permit the taking of vacation during the Season, this right is largely illusory because it is rarely available in practice.

36.     Furthermore, for much of the Season employees work varying shifts.  That is, instead of always working the same shift on a given day, employees are often shuffled from one shift to another.  They do not have the option to, for example, always work the "first shift" (6:00 a.m. to 2:30 p.m.) on each day of the Season.  Rather, they alternate from first shift to second shift (2:00 p.m. to 10:30 p.m.) and/or third shift (10:00 p.m. to 6:30 a.m.) depending on the day.

37.     Consequently, employees are scheduled to work double-back and triple-back shifts with some regularity.[2]  Working double-back and triple-back shifts is incredibly taxing on one's body and sleep and rest schedule—particularly when combined with a requirement that an employee work every single day of the Season.

38.     The Regulations and other policies and practices concerning employee work schedules

---

[2] A "double back" refers to receiving only one shift off in a given twenty-four-hour period (*e.g.* working the first shift in the morning and then working the third shift in the evening or working the second shift in the afternoon and then working the first shift starting at 6:00 a.m. the following morning).  A "triple back" refers to working three shifts in a forty-hour or forty-eight-hour period (*e.g.* working the first shift in the morning, then working the third shift in the evening and then working the second or third shift on the following day).

CLASS ACTION COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF RELATED TO VIOLATIONS OF THE ADEA AND FEHA; REPRESENTATIVE ACTION UNDER PAGA

and attendance at the Plant that are described in paragraphs 29-37 of this Complaint are hereby defined as the "In-Season Attendance Policies."

39.     The effect of the In-Season Attendance Policies is as follows.  For every single day during a period of time that lasts from four to six months (depending on the length of the Season), employees at the Plant have to work about eight and a half hours per day, and sometimes more if a double back or triple back shift is involved.  If they take even one day off from work, they are subject to discipline.  Even if they are ill, tired, aching or otherwise indisposed, they may be suspended from employment and/or fired for taking a day's rest here or there.

40.     Del Monte does not offer any method for any employee, no matter his or her age, to opt-out of the draconian requirements of its In-Season Attendance Policies or otherwise work a less onerous schedule.  The only "acceptable" one-off excuses for an employee missing work on a given day are extremely limited—for example, hospitalization or a death in the family.  Further, Del Monte does not publicize any method for any employee, no matter the extent of his or her physical impairments, to work a reduced schedule.  Rather, an employee with a physical impairment who does not wish to work every single day of the Season must first know that s/he has the right to receive reasonable accommodations under the ADA and FEHA and then s/he must actually request such an accommodation through a formal process with Del Monte's HR department.

41.     For a number of reasons, many disabled employees at the Plant do not know about their right to request these accommodations.  For instance, a language barrier prevents many Spanish-speaking employees from reading Del Monte's EEO policies.  In addition, there is a perception at the Plant that Del Monte refuses to grant accommodations to disabled employees at the Plant.  The Plaintiffs and many other employees at the Plant know about this history and practice.  In fact, Mr. Herrera and Mr. Austin both recently sought accommodations for different disabilities and both of these requests were denied outright.  Thus, many workers who are otherwise disabled and might qualify for an accommodation are afraid to request the right to work a reduced schedule because they may experience retaliation if they do so.  Given the foregoing, Del Monte's one-off accommodation

process is largely illusory and wholly-insufficient to address the effects that the In-Season Attendance

Policies have on disabled employees at the Plant.

**IX.**   **THE IN-SEASON ATTENDANCE POLICIES HAVE A DISPARATE, ADVERSE IMPACT ON EMPLOYEES WHO ARE OVER THE AGE OF FORTY**

42.   Although the In-Season Attendance Policies may be facially neutral, they have a disparate, adverse impact on employees who are over the age of forty.  The harms that disparately affect older workers include—without limitation—receiving disciplinary write ups and "points" on their records as well as being suspended and discharged from employment due to absences.  Many of the Plaintiffs have received just these sorts of disciplinary actions.  Many other members of the ADEA Class and the FEHA Age Sub-Class have experienced similar adverse employment actions. Further, as a consequence of attending work for months in a row without a day off, members of the FEHA Age Sub-Class, including the Plaintiffs, experience non-economic harms like emotional distress, loss of enjoyment of life, and domestic discord.  Consequently, older employees, as a protected group, are disproportionately affected by Del Monte's practice of applying the In-Season Attendance Policies.

43.   In general, employees who are over the age of forty will have more difficulty complying with the In-Season Attendance Policies than employees who are under the age of forty. The difficulties stem from the fact that almost all employees who work at the Plant are asked to perform a physically demanding job.  Employees who are over the age of forty—in general—require more time to recover from such physically taxing work.  Double-back and triple-back shifts as well as the lack of days of rest in between shifts take a greater toll on employees who are over the age of forty than employees who are under the age of forty.  Thus, employees who are over the age of forty are more likely to need a day off from work in order to recuperate on a weekly, or at least bi-weekly or monthly basis.  To the extent they are deprived of this day off then Del Monte has unlawfully forced them to choose between two harmful options: (i) comply with the In-Season Attendance Policies but experience emotional distress, pain and suffering and other non-economic harms; or (ii)

CLASS ACTION COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF RELATED TO
VIOLATIONS OF THE ADEA AND FEHA; REPRESENTATIVE ACTION UNDER PAGA

miss work, receive points and be subject to various disciplinary actions that have economic harms.

44.     Plaintiffs contend that scholarly literature, expert reports and other evidence from experts in the fields of aging, gerontology, pain management and others demonstrate that employees over the age of forty, as a group, have less physical stamina, experience more chronic pain, and require longer recovery times than employees who are under the age of forty.  As a result, employees who are over the age of forty are less likely to be able to comply with the In-Season Attendance Policies—and therefore lose wages and jobs more frequently than employees who are under the age of forty—and they also experience emotional distress, pain, and suffering as result of complying with the In-Season Attendance Policies.

45.     As set forth above, the In-Season Attendance Policies materially affect the terms, conditions, and privileges of employment for members of the ADEA Class and the FEHA Age Sub-Class.  They deny employees the right to a weekly day off and hang a Damoclean Sword over their heads—either work at great cost to their families and physical and emotional well-being or be fired from one of the better jobs available to blue collar workers in Kings County California.  In addition, the In-Season Attendance Policies impair employees' job performance and prospects for promotion. They do so because employees are not at their best and are more likely to make mistakes—including ones that can cause personal injuries—if they are required to work for months on end without receiving the appropriate amount of rest.

## X.     THE IN-SEASON ATTENDANCE POLICIES HAVE A DISPARATE, ADVERSE IMPACT ON EMPLOYEES WHO ARE DISABLED BY PHYSICAL IMPAIRMENTS

46.     Although the In-Season Attendance Policies may be facially neutral, they have a disparate, adverse impact on employees who are disabled due to physical impairments.  The harms that disparately affect disabled workers include—without limitation—receiving disciplinary write ups and "points" on their records as well as being suspended and discharged from employment due to absences.  Many of the Plaintiffs have received just these sorts of disciplinary actions.  Many other members of the FEHA Disability Sub-Class have experienced similar adverse employment actions.

Further, as a consequence of attending work for months in a row without a day off members of the FEHA Disability Sub-Class, including the Plaintiffs, experience non-economic harms like emotional distress, loss of enjoyment of life, and domestic discord.  Consequently, disabled employees, as a protected group, are disproportionately affected by Del Monte's practice of applying the In-Season Attendance Policies.

47.     In general, employees who have physical impairments that constitute a "disability" under FEHA will have more difficulty complying with the In-Season Attendance Policies than employees who do not have physical impairments.  The difficulties stem from the fact that almost all employees who work at the Plant are asked to perform a physically demanding job.  Employees who have physical impairments—in general—require more time to recover from such physically taxing work and to rest in between shifts than employees who are not disabled.  Thus, they are more likely to need a day off from work in order to recuperate on a weekly, or at least bi-weekly or monthly basis.  To the extent they are deprived of this statutory day of rest they have two choices which are both unlawful: comply with the In-Season Attendance Policies but experience emotional distress, pain and suffering or miss work and be subject to various disciplinary actions.

48.     Plaintiffs contend that scholarly literature, expert reports and other evidence from experts in relevant fields of medicine and statistical research confirm that employees who have disabilities, as a group, have less physical stamina, experience more chronic pain, and require longer recovery times than employees who do not have disabilities.  As a result, employees who are disabled by physical impairments are less likely to be able to comply with the In-Season Attendance Policies—and therefore lose wages and jobs more frequently than employees who are not disabled under FEHA—and they also experience emotional distress, pain and suffering as result of complying with the In-Season Attendance Policies

49.     The In-Season Attendance Policies materially affect the terms, conditions, and privileges of employment of the members of the FEHA Disability Sub-Class and impair the job performance and prospects for advancement and promotion for members of the FEHA Disability

CLASS ACTION COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF RELATED TO VIOLATIONS OF THE ADEA AND FEHA; REPRESENTATIVE ACTION UNDER PAGA

1    Sub-Class in the same respects as the In-Season Attendance Policies affect members of the ADEA

2    Class and the FEHA Age Sub-Class as described above.

3    **XI.    EMPLOYEES EXPERIENCE UNLAWFUL PRACTICES UNDER THE ADEA AND**

4    **FEHA DUE TO THE IN-SEASON ATTENDANCE POLICIES**

5        50.    FEHA states that it is an unlawful employment practice for "an employer because of

6    the … physical disability [or] age … of any person to discriminate against the person in

7    compensation or in terms, conditions or privileges of employment." Gov. Code § 12940.  The phrase

8    "terms, conditions, or privileges of employment" also appears in the ADEA and has been construed

9    by federal and state courts to strike at the entire spectrum of disparate treatment in employment.

10       51.    If a reasonable jury could find that the challenged act, omission, or practice had an

11   effect on the plaintiff's employment based on all the surrounding circumstances, the question of

12   whether a particular act or practice is an unlawful employment practice, as defined broadly by the

13   statute itself, is one for the jury.

14       52.    Members of the ADEA Class and the FEHA Class who were terminated, laid off,

15   demoted, suspended or who in some other way lost pay as a result of the In-Season Attendance

16   Policies clearly experienced adverse employment actions under the ADEA and FEHA.  Plaintiffs

17   understand that many disabled individuals and many older workers have experienced terminations,

18   demotions, suspensions and losses of pay as a result of the In-Season Attendance Policies and that

19   these adverse actions have disproportionately affected the members of each of the FEHA Disability

20   Sub-Class and the FEHA Age Sub-Class, each as protected groups.

21       53.    In addition, an adverse employment practice may occur not as one swift blow but

22   rather as a series of subtle, yet damaging injuries.  Months of emotional distress, pain and suffering

23   associated with an employee's daily, anguished choice between either going into work under

24   unreasonable and oppressive conditions or risking termination of his or her employment by taking a

25   needed day off strikes at the heart of employees' "terms, conditions, or privileges of employment."

26   With a reasonable appreciation of the realities of the workplace it is clear that such emotional

18

CLASS ACTION COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF RELATED TO
VIOLATIONS OF THE ADEA AND FEHA; REPRESENTATIVE ACTION UNDER PAGA

distress, pain and suffering is cognizable as an adverse employment action under FEHA because to find otherwise would deprive employees of the appropriate and generous protection against employment discrimination that the FEHA was intended to provide. Further, job discrimination foments domestic strife and unrest—a point to which all of the Plaintiffs can attest.

## XII. THERE IS NO REASONABLE FACTOR OTHER THAN AGE THAT JUSTIFIES CONTINUED APPLICATION OF THE IN-SEASON ATTENDANCE POLICIES

54. Plaintiffs believe that older workers and disabled workers, as compared to younger workers and those who do not have physical impairments, experience more economic harms (suspension, demotion, write-ups, terminations, resignations) as a result of the In-Season Attendance Policies. Discovery in this matter will confirm Plaintiffs' beliefs. Plaintiffs also believe that older workers and disabled workers, as compared to younger workers and those who do not have physical impairments, experience more non-economic harms as a result of the In-Season Attendance Policies. Discovery in this matter will confirm Plaintiffs' beliefs.

55. There is no reasonable factor other than age that can justify the In-Season Attendance Policies because the In-Season Attendance Policies are not objectively reasonable when viewed from the position of a prudent employer mindful of its responsibilities under the ADEA under like circumstances and because Del Monte cannot show that the In-Season Attendance Policies are reasonably designed to further or achieve a legitimate business purpose or that they are administered in a way that reasonably achieves a legitimate business purpose. Moreover, whatever purpose drives the application of the In-Season Attendance Policies, that factor has not been defined accurately or applied fairly and accurately, and supervisors have not been given guidance or training about how to apply the factor in order to avoid age discrimination. Plaintiffs are not aware that Del Monte has ever assessed the adverse impact of the In-Season Attendance Policies on older workers.

## XIII. NO BUSINESS NECESSITY EXISTS FOR THE IN-SEASON ATTENDANCE POLICIES AND DEL MONTE COULD USE LESS RESTRICTIVE MEANS

56. The In-Season Attendance Policies are draconian and oppressive. They apply to one

thousand employees or more and require them to spend every single day of their lives, for four to six months in a row, working in a tomato processing plant.  Del Monte does not need to apply these policies for any legitimate business reasons, such as job-relatedness or business necessity.

57.     Virtually all of the employees affected by the In-Season Attendance Policies are engaged in production on a line, shipping, receiving, packing, loading or performing another manual task.  Any given employee's work is repetitive, standardized and can easily be performed by someone else who has received minimal training.  There is no reason to require the same employee to perform these tasks for one hundred or more consecutive days.

58.     On a macro level, Del Monte could take steps to increase its supply of workers at the Plant and/or decrease its demand for workers at the Plant.  For example, Del Monte could easily hire more employees to work at the Plant.  That would allow it to relax the In-Season Attendance Policies.  Certainly, there is no shortage of labor from which Del Monte could hire additional employees.  The unemployment rate in Kings County has hovered around 10% over the past two years and the unemployment rates in the surrounding counties of Tulare and Fresno have been even higher.  Hiring more workers would allow Del Monte to give current employees a day off every now and then during the Season without compromising the overall number of employees in the Plant on a given day.  In addition, Del Monte could also take steps to lengthen the Season, which would decrease that amount of product that needs to be processed and canned on any given day.  Doing so would decrease the total number of workers needed to work at the Plant on any given day and would allow for the scheduling of days off.

59.     Beyond making changes to the Plant that would increase the supply of employees or smooth the demand for employees, Del Monte could adopt scheduling and attendance policies that place less of a burden on employees who are over the age of forty and employees who are disabled.  For instance, Del Monte could provide all employees at the Plant with the option to work five or six days per week during the Season rather than seven.  It could also limit this option to employees who are over the age of forty and employees who disclose that they have physical impairments.

CLASS ACTION COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF RELATED TO
VIOLATIONS OF THE ADEA AND FEHA; REPRESENTATIVE ACTION UNDER PAGA

60. In addition to offering different—and optional—work schedules, Del Monte could revise the In-Season Attendance Policies so that employees receive a greater number of "no fault" absences before experiencing adverse employment actions like disciplinary write-ups, suspensions and discharges from employment. Del Monte could also provide more opportunities to have a given absence from work excused such that employees who wished to take a day off to recuperate would not necessarily receive a "point" for doing so. Further, Del Monte could offer different In-Season Attendance Policies depending on whether an employee is over or under the age of forty and whether the employee discloses a physical impairment.

61. The preceding list of less restrictive means is by no means exhaustive or exclusive. Many other attendance policies and regulations would serve Del Monte's legitimate business interests just as well if not much better than the In-Season Attendance Policies do and Plaintiffs expect that discovery and expert testimony will reveal such other formulations.

## XIV. DEL MONTE IS AWARE THAT THE IN-SEASON ATTENDANCE POLICIES HAVE DISCRIMINATORY IMPACTS BUT HAS FAILED TO TAKE REASONABLE STEPS TO PREVENT SUCH DISCRIMINATION

62. It is intuitive that older workers at the Plant and disabled workers at the Plant will experience disproportionate adverse employment actions and other harms as a result of the In-Season Attendance Policies. For example, many employees at the Plant are in their sixties and seventies and many have physical disabilities. It does not take a medical degree to understand that most seventy-year-old employees will be in a lot of pain and will suffer emotionally and physically if they are required to work a physically demanding job for eight hours a day for one hundred days in a row (or more). These employees show up to work every day during the Season under duress, even when they need a day off, because the alternative is to lose their job and source of income. When such an employee resigns from employment, it is often because they can no longer comply with the strictures of the In-Season Attendance Policies. There are many reasonable steps that Del Monte could have taken—but did not—that would have protected older and disabled workers from experiencing

CLASS ACTION COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF RELATED TO
VIOLATIONS OF THE ADEA AND FEHA; REPRESENTATIVE ACTION UNDER PAGA

1    disparate impact and disparate harms due to the In-Season Attendance Policies.  Some of those

2    reasonable steps to prevent discrimination include adopting the less restrictive alternatives to the In-

3    Season Attendance Policies that are described in this complaint.  Other reasonable steps will be

4    identified in discovery.

5          63.      Moreover, the Plant's workforce is blue collar and consists of many Spanish speaking

6    workers.  They are not well informed of their right to request reasonable accommodations for

7    disabilities and they are understandably hesitant to do so.  In addition, given the workforce's limited

8    means, it is a hardship for them to secure one-off "excused absences" under the In-Season

9    Attendance Policies because doing so requires a note confirming that an employee was hospitalized

10   or saw a doctor.  Obtaining either of those items can be an expensive and time consuming endeavor.

11   Thus, it is not enough for Del Monte to say that disabled workers who want to work fewer than seven

12   days per week ought to each, individually, request an accommodation and go through an interactive

13   process because, for understandable reasons, few employees will avail themselves of this option.

14   **XV.    THE IN-SEASON ATTENDANCE POLICIES DEPRIVE EMPLOYEES OF THE**

15          **WEEKLY DAY OF REST REQUIRED BY LABOR CODE §§ 551-552**

16         64.      Labor Code § 551 provides that "Every person employed in any occupation of labor is

17   entitled to one day's rest therefrom in seven."  Labor Code § 552 provides that "No employer of labor

18   shall cause his employees to work more than six days in seven."  Labor Code § 553 provides that

19   "Any person who violates this chapter is guilty of a misdemeanor."  Labor Code § 554 provides

20   potential exceptions to these rules such that an employer may comply with Labor Code §§ 551-552

21   "if in each calendar month the employee receives days of rest equivalent to one day's rest in seven"

22   or if the employer and a labor organization entered into a valid collective bargaining agreement that

23   "expressly provides" Labor Code §§ 551-552 do not apply to employees.  Wage Order 3 contains

24   similar provisions and confirms that Labor Code §§ 551-552 are applicable to employees at the Plant

25   unless a CBA "expressly provides otherwise."  No such CBA exists here.

26         65.      Here, the In-Season Attendance Policies deprive employees at the Plant of a weekly

1  day of rest during the Season, cause them to work more than six days in seven during the Season, and

2  fail to provide employees with four days off per month during the Season.  Moreover, Labor Code §

3  554 is not applicable to work at the Plant because the nature of employees' work at the Plant does not

4  require them to work daily during the Season.  Rather, the fungible nature of work on a line and

5  elsewhere allows other employees to substitute for one another with ease.  In addition, although Local

6  948 and Del Monte have been parties to CBAs, none of them expressly provide that Labor Code §§

7  551-552 are inapplicable.  In fact, all of the relevant CBAs are silent on the issue.  The 2012 CBA,

8  the 2015 CBA and prior CBAs all expressly supersede any letters of understanding or similar

9  materials that were previously created or in effect.  Thus, there is no CBA that expressly provides

10 Labor Code §§ 551-552 are inapplicable to the Plant and the relevant CBAs superseded any prior

11 letters of understanding and similar documents that may have addressed Labor Code §§ 551-552.

12     66.     Del Monte pays employees at the Plant on a weekly basis and the In-Season

13 Attendance Policies deprive employees of a weekly day of rest for every single day of the Season.

14 Consequently, Del Monte violates Labor Code §§ 551-553 during every week of the Season and

15 commits that violation with respect to virtually all hourly employees at the Plant.  Del Monte also

16 violates each of Labor Code § 1198 and Labor Code § 1199 by virtue of violating Labor Code §§551-

17 552 and Wage Order 3.

18 **XVI.    ADEA COLLECTIVE ACTION ALLEGATIONS**

19     67.     Plaintiffs bring this action on behalf of themselves and all others adversely affected by

20 the In-Season Attendance Policies in a similar manner.  Thus, this is a collective action complaint

21 under the ADEA brought pursuant to 29 U.S.C. § 623(a), 29 U.S.C. § 626(b) and 29 U.S.C. § 216(b).

22 Plaintiffs seek to represent a class composed of and defined as follows: "All employees at the Plant

23 who, between August 2015 and the present, have been over the age of forty and have been subject to

24 the In-Season Attendance Policies" (the "ADEA Class").

25     68.     Plaintiffs' claims are representative of those of the ADEA Class and members of the

26 ADEA Class are similarly situated to each other under 29 U.S.C. §§ 216(b), 626(b).  In particular,

CLASS ACTION COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF RELATED TO
VIOLATIONS OF THE ADEA AND FEHA; REPRESENTATIVE ACTION UNDER PAGA

Plaintiffs and all other members of the ADEA Class have been subject to the In-Season Attendance Policies, which constitute a single policy or plan that is infected by discrimination.  Additional information about why and how members of the ADEA Class are similarly situated is set forth below in Plaintiffs' FEHA Class allegations.

69.     Given that Plaintiffs' claims are representative of those of the ADEA Class and all members of the ADEA Class are similarly-situated in the manner in which they were affected by the In-Season Attendance Policies, the Court should authorize Plaintiffs to send notice and "opt-in" information to potential members of the ADEA Class based on the conclusion that this case should be treated as a collective action under 29 U.S.C. §§ 216(b), 626(b).

70.     Following the Court's decision to allow the ADEA claims to proceed on a representative basis, this Court should set a two-stage trial.  First, Plaintiffs will prove class-wide liability by showing that the In-Season Attendance Policies are uniformly applied in a manner that has a disparate, adverse and statistically-significant impact on members of the ADEA Class.  At a later, second stage Plaintiffs will prove individual damages as to each member of the ADEA Class who opt-in, including economic harms and liquidated damages.

## XVII.     FEHA CLASS ACTION ALLEGATIONS

71.     Plaintiffs bring this action on behalf of themselves and all others adversely affected by the In-Season Attendance Policies in a similar manner.  Thus, this is a class action complaint that is authorized by Gov. Code § 12961 and brought pursuant to FRCP 23.  Plaintiffs seek to represent a class composed of and defined as follows (the "FEHA Class"): "All members of the FEHA Age Sub-Class and the FEHA Disability Sub-Class."

72.     There are two sub-classes within the FEHA Class, the "FEHA Age Sub-Class" and the "FEHA Disability Sub-Class" (each as defined below).

73.     The FEHA Age Sub-Class consists of: "All employees at the Plant who, between August 2015 and the present, have been over the age of forty and have been subject to the In-Season Attendance Policies."

CLASS ACTION COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF RELATED TO VIOLATIONS OF THE ADEA AND FEHA; REPRESENTATIVE ACTION UNDER PAGA

74. The FEHA Disability Sub-Class consists of: "All employees at the Plant who, between August 2015 and the present, have been disabled by a physical impairment and have been subject to the In-Season Attendance Policies."

75. Plaintiffs reserve the right under FRCP 23, to amend or modify the FEHA Class definition with greater specificity or further division into sub-classes or limitation to particular issues. With additional discovery, these definitions may be modified to distinguish between employees who have experienced adverse employment actions that involved loss of pay or benefits and those who experienced emotional distress, pain and suffering. In addition, these definitions may be modified to enumerate particular impairments, diseases, or categories thereof.

*FRCP 23*

76. Plaintiffs may maintain their second through fourth causes of action as a class action under each of FRCP 23(b)(1), FRCP 23(b)(2), and FRCP 23(b)(3).

77. A class action is appropriate under FRCP 23(b)(1) when prosecuting separate actions by or against individual class members would create a risk of inconsistent adjudications or individual adjudications that are dispositive as to absent class members. Here, the central issues in the case are whether the In-Season Attendance Policies have a disparate impact on older and/or disabled workers. This will require examination of the text and application of the In-Season Attendance Policies and a statistical examination of how they impact members of the FEHA Class. The disparate impact inquiry will be the same whether the inquiry proceeds on an individual or class-wide basis. Since the analysis of the issue will be the basically the same for all class members, adjudicating the issue individually as to each class member could lead to inconsistent results or issue preclusive results or collateral estoppel as to absent class members. Thus, liability is best evaluated at the class level.

78. A class action is appropriate under FRCP 23(b)(2) when the party opposing the class has acted or refused to act on grounds that apply generally to the class such that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole. Here, Plaintiffs seek an injunction under FEHA that prevents Del Monte from applying the In-Season Attendance

CLASS ACTION COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF RELATED TO VIOLATIONS OF THE ADEA AND FEHA; REPRESENTATIVE ACTION UNDER PAGA

Policies to members of the FEHA Class and that requires Del Monte to adopt a less restrictive alternative.  Since August 2016, Del Monte has been aware of Plaintiffs' claims and their demand that the In-Season Attendance Policies be changed.  Nevertheless, it has refused to revise the In-Season Attendance Policies.  This conduct has applied generally to the FEHA Class and any policy change would be applied generally to the FEHA Class as a whole.  Therefore, injunctive relief is appropriate as to the class as a whole.

79.     A class action is appropriate under FRCP 23(b)(3) when questions of law or fact common to class members predominate over any questions affecting only individual members and a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.  As set forth below, common questions as to the application of the In-Season Attendance Policies and the legal significance of that application predominate over individual questions—which are largely confined to damages.  Further, obtaining a class wide determination regarding the legality of the In-Season Attendance Policies and then adjudicating damages individually is superior to other available methods for resolving this controversy.

*TYPICALITY AND COMMUNITY OF INTEREST*

80.     Plaintiffs and all members of the FEHA Class experienced virtually identical violations of FEHA.  Specifically, they were subject to the same unlawful practice—application of the In-Season Attendance Policies.  Plaintiffs' claims are therefore typical of the claims that other members of the FEHA Class could raise regarding the In-Season Attendance Policies.  If application of the In-Season Attendance Policies violated the law then employees who were harmed by them would be permitted to recover damages.  All members of the ADEA Class and the FEHA Class are equally interested in recovering damages.  Thus, there is a well-defined community of interest in pursuing FEHA claims on a class-wide basis on behalf of the FEHA Age Sub-Class and the FEHA Disability Sub-Class.

*ASCERTAINABILITY*

81.     Members of the FEHA Class are a readily ascertainable according to information in

CLASS ACTION COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF RELATED TO
VIOLATIONS OF THE ADEA AND FEHA; REPRESENTATIVE ACTION UNDER PAGA

Del Monte's possession and in the absent class members' possession.  Del Monte has information about the ages of all employees at the Plant and has information about whether such employee was subject to the In-Season Attendance Policies.  Del Monte also has information about whether any particular employee was discharged, suspended, received points or other discipline, or resigned from employment during the relevant period of time.  Its records will illustrate whether an employee's discipline, suspension, termination or resignation was related to an attendance violation.  The employees' personnel files will also shed light on difficulties—including emotional distress, pain and suffering—they may have experienced as a result of the In-Season Attendance Policies.  This issue can also be addressed by surveys and other notices directed to class members.  Del Monte, as a federal contractor, gathers information about whether employees are disabled.  To the extent Del Monte does not have records that identify whether employees have physical disabilities under FEHA or have experienced intangible adverse employment actions, this information can be identified using surveys that are directed to Plant employees and other forms of class notices.

*NUMEROSITY*

82.     There are at least two hundred members of the FEHA Class and they all work or worked for Del Monte at the Plant.  Many of the absent class members are seasonal workers who do not have a year-round permanent address.  Many do not speak English fluently.  Under the circumstances, joinder would be impracticable—particularly without an effective notice in connection with first-step certification of the ADEA Class.  Therefore, the FEHA Class satisfies the numerosity requirement.

*COMMON QUESTIONS OF LAW AND FACT*

83.     There are questions of law and fact common to the FEHA Class that predominate over any questions affecting only individual members of the class. These common questions of law and fact include, without limitation, the following.

- Do the In-Season Attendance Policies have a disparate, adverse impact on Plant employees over the age of forty?

CLASS ACTION COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF RELATED TO VIOLATIONS OF THE ADEA AND FEHA; REPRESENTATIVE ACTION UNDER PAGA

- Do the In-Season Attendance Policies have a disparate, adverse impact on Plant employees who have physical disabilities?
- Has Del Monte taken all reasonable steps to prevent the disparate, adverse impacts that the In-Season Attendance policies have on Plant employees who are over the age of forty?
- Has Del Monte taken all reasonable steps to prevent the disparate, adverse impacts that the In-Season Attendance policies have on Plant employees who have physical disabilities?
- Does a business necessity exist for the In-Season Attendance Policies?
- Does a less restrictive means than the In-Season Attendance Policies exist for accomplishing Del Monte's business goals?
- Do employees who are over the age of forty receive more absence-related points during the Season than employees who are under the age forty?
- Do employees who are physically disabled receive more absence-related points during the Season than employees who are under not physically disabled?
- Do employees who are over the age of forty receive disciplinary action (including suspension or termination) or resign from Del Monte during the Season more often than employees who are under the age forty?
- Do employees who are over the physically disabled receive disciplinary action (including suspension or termination) or resign from Del Monte during the Season more often than employees who are not physically disabled?
- Was Del Monte aware of the emotional distress, pain and suffering and other intangible adverse employment actions that members of the FEHA Class experienced as a result of the In-Season Attendance Policies?

*ADEQUACY OF REPRESENTATION*

84.     Plaintiffs have agreed to serve as representatives of all similarly situated employees to

raise common claims.  They understand that they owe a fiduciary obligation to obtain competent counsel and take actions to promote, advance and prevail on the claims being made, not just individually, but for the collective group of employees as a whole.  Plaintiffs will fairly and adequately represent and protect the interests of the members of the Plaintiffs Class.  Plaintiffs have agreed to represent the proposed class and act as fiduciaries for their interests in addition to their own.  Plaintiffs are aggrieved in a similar manner as the proposed class and proposed sub-classes, with the only variation being the amount of loss and damage suffered by individual employees as a result of defendant's common, uniform and systematic practices.  Further, counsel who represents Plaintiffs is competent and experienced in litigating employment class actions and has the means and willingness to devote sufficient resources to the case in order to secure an appropriate outcome for the FEHA Class.

*SUPERIORITY OF CLASS ACTION*

85.    A class action is superior to a series of individual actions because common questions of law and fact predominate.  Liability may be proved on a class-wide basis and damages can be proved individually.  A class action is superior to other available means for the fair and efficient adjudication of this controversy.  Individual joinder of all members of the FEHA Class is not practicable, and questions of law and fact common to the FEHA Class predominate over questions affecting only individual FEHA Class members.  A class action will allow those similarly situated and similarly affected to litigate their claims in the most efficient and economical manner for the parties and the judicial system.  Plaintiffs are unaware of any difficulties that are likely to be encountered in the management of this action that would preclude its maintenance as a class action.

**XVIII.    REPRESENTATIVE ALLEGATIONS REGARDING PAGA CAUSE OF ACTION**

86.    Plaintiffs gave notice to Del Monte and the LWDA of the violations of Labor Code § 551, 552, 553, 558, 1198, and 1199 alleged herein.  Sixty-five days have passed since Plaintiffs delivered notice of the PAGA violations to the LWDA and Del Monte.  Plaintiffs have not been informed that the LWDA intends to investigate any of the violations or that Del Monte will correct

them.  Thus, Plaintiffs have exhausted all pre-suit procedures required under Labor Code § 2699.3 and may now bring this action on a representative basis under PAGA, seeking penalties with respect to themselves and the other aggrieved employees.

87.     Though they reserve their right to amend or modify the following definition, Plaintiffs currently bring their PAGA claims on behalf of a group of "aggrieved employees" consisting of all hourly employees who were employed by Del Monte at the Plant from August 6, 2015 through the date of the trial (the "Aggrieved Employees").  Due to its violations of Labor Code §§ 551, 552, 553, 558, 1198, and 1199, Del Monte is liable to the State of California's LWDA and to each aggrieved employee for a civil penalty in the amount set forth in Labor Code § 2699(f)(2) and subject to the 75% and 25% division set forth in PAGA.

88.     Plaintiffs estimate that there are approximately 1,000 Aggrieved Employees and that, as of the date of this complaint, aggregating these Aggrieved Employees' pay periods would yield approximately 20,000 total pay periods during which a violation of PAGA occurred.

89.     The monetary penalties owed for each initial violation (*i.e.* the first pay period during which each particular aggrieved employee worked more than six days in seven) are $600—reflecting six violations by Del Monte of different provisions of the Labor Code (§§ 551, 552, 553, 558, 1198, 1199) with the amount of $100 per violation being as specified in Labor Code § 2699(f)(2).  The monetary penalties owed for each subsequent violation (*i.e.* the second pay period and each subsequent pay period during which an individual worked more than six days in seven) are $1,200—reflecting violations by Del Monte of six provisions of the Labor Code with the penalty for each violation being in the amount specified in Labor Code § 2699(f)(2).

90.     Though Plaintiffs' PAGA claims need not meet class certification requirements, it should be clear that claims under Labor Code § 551, 552, 553, 558, 1198, and 1199 are manageable on a representative basis and may be tried accordingly.

91.     First, Plaintiffs will prove that the In-Season Attendance Policies constitute a common policy and practice at Del Monte whereby aggrieved employees and that those policies require

CLASS ACTION COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF RELATED TO VIOLATIONS OF THE ADEA AND FEHA; REPRESENTATIVE ACTION UNDER PAGA

1   employees to work seven days per week during the Season.  Second, the Aggrieved Employees can

2   be readily identified using payroll records and employee census data that are in the possession of Del

3   Monte.  Third, penalties can be calculated on an individual and class-wide basis with reference to the

4   above-mentioned payroll records.  Fourth, any defenses that Del Monte raise related to its CBAs with

5   Local 948 may be adjudicated on a class-wide basis.

6       92.     Penalties under PAGA are a product of the number of Aggrieved Employees who

7   were employed during the relevant period of time and the number of pay periods at issue, subject to

8   this Court's authority to award a lesser amount than the maximum civil penalty if it finds that based

9   on the facts and circumstances of this particular case, to do otherwise would result in an award that is

10  unjust, arbitrary and oppressive, or confiscatory.

11                          **FIRST CAUSE OF ACTION**

12                          **AGE DISCRIMINATION**

13              **(29 U.S.C. § 623(a) / 29 U.S.C. § 626(b) / 29 U.S.C. § 216(b))**

14      Plaintiffs hereby incorporate by reference Paragraphs 1 through 92 of this complaint as if

15  fully set forth herein and allege the following cause of action.

16      93.     Plaintiffs are currently employed by Defendant and have all been employed by

17  Defendant for many years.  Defendant is a covered employer under the ADEA.  Plaintiffs are all over

18  the age of forty and are all members of the ADEA Class.  At all times for the past decade, Defendant

19  has applied the In-Season Attendance Policies.  The In-Season Attendance Policies are facially

20  neutral but they have adverse impacts on Plaintiffs and other employees at the Plant who are over the

21  age of forty.  The disparate, adverse impacts include economic injuries such as lost wages that result

22  from terminations, suspensions, demotions, other disciplinary write ups as well as employees'

23  resignations.  These adverse impacts affect employees who are over the age of forty at much greater

24  rates of frequency and severity than employees who are under the age of forty.  Thus, older

25  employees, as a protected group, are disproportionately affected by Defendant's practice of applying

26  the In-Season Attendance Policies.  There is no reasonable factor other than age that justifies the use

CLASS ACTION COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF RELATED TO
VIOLATIONS OF THE ADEA AND FEHA; REPRESENTATIVE ACTION UNDER PAGA

of the In-Season Attendance Policies.  Rather, the In-Season Attendance Policies are unreasonable on their face and as applied.  They are not objectively reasonable when viewed from the position of a prudent employer mindful of its responsibilities under the ADEA under like circumstances.  They are neither reasonably designed to further a legitimate business purpose, nor are they administered in a way that reasonably achieves such a legitimate business purpose in light of the particular facts and circumstances that were known, or should have been known, to the Defendant.  In sum, the In-Season Attendance Policies constitute an unlawful employment practice because they have the above-identified discriminatory effects and therefore they violate the prohibition on engaging in discrimination on the basis of an employee's age that is set forth in 29 U.S.C. § 623(a).  Plaintiffs and other members of the ADEA Class have been harmed by these unlawful practices.  They have suffered economic damages and Defendant's unlawful employment practices were a substantial factor in causing these harms.  Defendant's continued application of the In-Season Attendance Policies was done with reckless disregard for whether the application of the In-Season Attendance Policies was permitted by applicable law and therefore Defendant willfully violated the ADEA. Plaintiffs seek liquidated damages for Defendant's violation both on their own behalves and on behalf of other members of the ADEA Class.

## SECOND CAUSE OF ACTION

### AGE DISCRIMINATION

**(California Government Code § 12940(a) / California Government Code § 12961 / FRCP 23)**

Plaintiffs hereby incorporate by reference Paragraphs 1 through 93 of this complaint as if fully set forth herein and allege the following cause of action.

94.     Plaintiffs are currently employed by Defendant and have all been employed by Defendant for many years.  Defendant is a covered employer under FEHA.  Plaintiffs are all over the age of forty and are all members of the FEHA Age Sub-Class.  At all times in 2015 and 2016 Seasons, Defendant has applied the In-Season Attendance Policies.  The In-Season Attendance Policies are facially neutral but they have adverse impacts on Plaintiffs and other employees at the

CLASS ACTION COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF RELATED TO
VIOLATIONS OF THE ADEA AND FEHA; REPRESENTATIVE ACTION UNDER PAGA

Plant who are over the age of forty.  The disparate, adverse impacts include economic injuries such as lost wages that result from terminations, resignations, suspensions, demotions, and other disciplinary write ups as well as non-economic injuries such as emotional distress, pain and suffering, domestic strife and other intangible harms.  These adverse impacts affect employees who are over the age of forty at much greater rates of frequency and severity than employees who are under the age of forty.  Thus, older employees, as a protected group, are disproportionately affected by Defendant's practice of applying the In-Season Attendance Policies.  No business necessity exists for application of the In-Season Attendance Policies or, if one does exist, then there are many alternative policies Defendant could adopt that would serve such business necessity but would not have adverse, disparate impacts on older workers.  In sum, the In-Season Attendance Policies constitute an unlawful employment practice because they have the above-identified discriminatory effects and therefore violate the prohibition on engaging in discrimination on the basis of an employee's age that is set forth in Gov. Code § 12940(a).  Plaintiffs and other members of the FEHA Class have been harmed by these unlawful practices.  They have suffered economic and non-economic damages and Defendant's unlawful employment practices were a substantial factor in causing these harms.  Defendant's continued application of the In-Season Attendance Policies was done with "malice" and/or "oppression" under Civil Code § 3294(c)(1) and/or Civil Code § 3249(c)(2) because applying these policies was despicable conduct carried on by Defendant with a willful and conscious disregard of the rights or safety of Plaintiffs and the FEHA Class and/or despicable conduct by Defendant that subjected Plaintiffs and the FEHA Class to cruel and unjust hardship in conscious disregard of their rights under FEHA and the ADEA.

## THIRD CAUSE OF ACTION

### DISABILITY DISCRIMINATION

**(California Government Code § 12940(a) / California Government Code § 12961 / FRCP 23)**

Plaintiffs hereby incorporate by reference Paragraphs 1 through 94 of this complaint as if fully set forth herein and allege the following cause of action.

CLASS ACTION COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF RELATED TO VIOLATIONS OF THE ADEA AND FEHA; REPRESENTATIVE ACTION UNDER PAGA

95.     Plaintiffs are currently employed by Defendant and have all been employed by Defendant for many years.  Defendant is a covered employer under FEHA.  Plaintiffs all have physical disabilities within the meaning of FEHA and so do all members of the FEHA Disability Sub-Class.  At all times in 2015 and 2016, Defendant has applied the In-Season Attendance Policies. The In-Season Attendance Policies are facially neutral but they have adverse impacts on Plaintiffs and other employees at the Plant who have physical disabilities.  The disparate, adverse impacts include economic injuries such as lost wages that result from terminations, suspensions, demotions, and other disciplinary write ups as well as non-economic injuries such as emotional distress, pain and suffering, domestic strife and other intangible harms.  These adverse impacts affect employees who have physical disabilities at much greater rates of frequency and severity than employees who do not have physical disabilities.  Thus, disabled employees, as a protected group, are disproportionately affected by Defendant's practice of applying the In-Season Attendance Policies.  No business necessity exists for application of the In-Season Attendance Policies or, if one does exist, then there are many alternative policies Defendant could adopt that would serve such business necessity but would not have adverse, disparate impacts on disabled workers.  In sum, the In-Season Attendance Policies constitute an unlawful employment practice because they have the above-identified discriminatory effects and therefore violate the prohibition on engaging in discrimination on the basis of an employee's physical disability that is set forth in Gov. Code § 12940(a).  Plaintiffs and other members of the FEHA Class have been harmed by these unlawful practices.  They have suffered economic and non-economic damages and Defendant's unlawful employment practices were a substantial factor in causing these harms.  Defendant's continued application of the In-Season Attendance Policies was done with "malice" and/or "oppression" under Civil Code § 3294(c)(1) and/or Civil Code § 3249(c)(2) because applying these policies was despicable conduct carried on by Defendant with a willful and conscious disregard of the rights or safety of Plaintiffs and the FEHA Class and/or despicable conduct by Defendant that subjected Plaintiffs and the FEHA Class to cruel and unjust hardship in conscious disregard of their rights under FEHA and the Americans with

CLASS ACTION COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF RELATED TO VIOLATIONS OF THE ADEA AND FEHA; REPRESENTATIVE ACTION UNDER PAGA

Disabilities Act of 1990 (the "ADA").

## FOURTH CAUSE OF ACTION

### FAILURE TO PREVENT DISCRIMINATION

**(California Government Code § 12940(k) / California Government Code § 12961 / FRCP 23)**

Plaintiffs hereby incorporate by reference Paragraphs 1 through 95 of this Complaint as if fully set forth herein and allege the following cause of action.

96.     As set forth in paragraphs 62 and 63 of this complaint, Plaintiffs and all members of the FEHA Class, the FEHA Age Sub-Class and the FEHA Disability Sub-Class were subject discrimination in the course of their employment.  Defendant knew they were experiencing disparate, adverse harms on the basis of their ages and disabilities.  Defendant also knew that there were many ways to correct or prevent these discriminatory harms.  Defendant failed to take any steps to prevent this discrimination, let alone all reasonable steps to prevent discrimination.  Plaintiffs and all members of the FEHA Class, the FEHA Age Sub-Class and the FEHA Disability Sub-Class were harmed and Defendant's failure to take all reasonable steps to prevent discrimination was a substantial factor in causing these harms.  In particular, Defendant has failed to adopt one of the less restrictive means of ensuring the Plant was staffed that are described in paragraphs 56-61 and it adopted unreasonable policies as described in paragraphs 54-55.  Moreover, Defendant's continued application of the In-Season Attendance Policies was done with "malice" and/or "oppression" under Civil Code § 3294(c)(1) and/or Civil Code § 3249(c)(2) because applying these policies rather than replacing them with policies that were not discriminatory was despicable conduct that was carried on with a willful and conscious disregard of the rights or safety of Plaintiffs and the FEHA Class and/or despicable conduct that subjected Plaintiffs and the FEHA Class to cruel and unjust hardship in conscious disregard of their rights under FEHA, the ADEA and the ADA.

## FIFTH CAUSE OF ACTION

### (VIOLATIONS OF PAGA)

### (California Labor Code § 2699(f) / California Labor Code § 2699(a))

Plaintiffs hereby incorporate by reference Paragraphs 1 through 96 of this Complaint as if fully set forth herein and allege the following cause of action:

97.     Plaintiffs and the Aggrieved Employees were employed by Defendant during the period from August 6, 2015 to the present time (the "PAGA Period").  During the PAGA Period, Defendant was aware that Plaintiffs and the Aggrieved Employees did not receive one day's rest in seven and did not receive an equivalent amount of time off per month—primarily during the Season.  Thus, Defendant violated Labor Code § 551, 552, 553, 558, 1198, and 1199 during the PAGA Period as to Plaintiffs and all Aggrieved Employees.  On August 6, 2016, Plaintiffs sent a notice, via certified mail to Defendant and by email and mail to the LWDA.  The notice outlined failures by Defendant to honor its obligations to Plaintiffs under Labor Code § 551, 552, 553, 558, 1198, and 1199.  The notice itemized various theories of liability and cited various provisions of the Labor Code that had been violated.  Accordingly, Plaintiffs exhausted their administrative remedies and may now pursue remedies under Labor Code § 2699.3, both on their own behalf and on behalf of the Aggrieved Employees for such violations as accrued during the PAGA Period.  Plaintiffs seek, on their own behalf and on behalf of all Aggrieved Employees, in each instance acting in a representative capacity on behalf of the State of California, the applicable penalty set forth in Labor Code § 2699(f)(2) for violations of Labor Code § 551, 552, 553, 558, 1198, and 1199 (with such penalty being payable 75% to the LWDA and 25% to the Aggrieved Employee).  Plaintiffs also seek their reasonable attorney's fees and costs under Labor Code § 2699(g)(1).

## PRAYERS FOR RELIEF

**WHEREFORE,** Plaintiffs pray for the following relief:

1.     An order under 29 U.S.C. § 216(b) allowing this action to proceed on a representative basis as to opt-in members of the ADEA Class by granting conditional or "first-step" collective

action status to the ADEA Class and also authorizing the sending of a notice to all members of the ADEA Class that, among other issues, informs them of the litigation and provides them with the opportunity to opt-in to it.

2.      Orders under FRCP 23(c)(1) defining the FEHA Class, the FEHA Age Sub-Class and the FEHA Disability Sub-Class, granting certification to each of those classes with respect to whether the In-Season Attendance Policies constitute a discriminatory practice under FEHA and whether their continued application violates FEHA, and appointing Sebastian Miller as class counsel.

3.      An order under FRCP 23(c)(2) directing notice to members of FEHA Class, the FEHA Age Sub-Class and the FEHA Disability Sub-Class.

4.      An injunction under the ADEA prohibiting Defendant from applying the In-Season Attendance Policies to members of ADEA Class because those policies are not based on a reasonable factor other than the class members' age.

5.      An injunction under FEHA and FRCP 23(b)(2) prohibiting Defendant from applying the In-Season Attendance Policies to members of each of the FEHA Age Sub-Class and the FEHA Disability Sub-Class and requiring Defendant to adopt a less restrictive alternative.

6.      Damages awarded to the named Plaintiffs and all members of the ADEA Class in respect of the first cause of action, in an amount according to proof but in excess of $1,000,000, and including back pay, reinstatement or front pay, and liquidated damages.

7.      Damages awarded to the named Plaintiffs and all members of the FEHA Class in respect of the second, third and fourth causes of actions, in an amount according to proof but in excess of $1,000,000, and including lost wages and other forms of back pay as well as damages for emotional distress, pain, suffering and other non-economic harms that are cognizable under FEHA.

8.      Exemplary damages in respect of the second, third and fourth causes of action under Civil Code § 3294 because Defendant, by virtue of its continued application of the In-Season Attendance Policies to the FEHA Class, has been guilty of "malice" and/or "oppression" within the meanings specified in Civil Code § 3294(c)(1)-(2).

CLASS ACTION COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF RELATED TO
VIOLATIONS OF THE ADEA AND FEHA; REPRESENTATIVE ACTION UNDER PAGA

9.      Reasonable attorney's fees and costs of suit in respect of Plaintiff's first cause of action as allowed by the ADEA under 29 U.S.C. §§ 216(b), 626(b) and other applicable fee-shifting statutes.

10.     Reasonable attorney's fees and costs of suit in respect of the second through fourth causes of action under FEHA as allowed by Gov. Code § 12965(b) and other applicable fee-shifting statutes.

11.     An order finding that the PAGA Class is manageable, identifying the Aggrieved Employees and awarding penalties under Labor Code § 2699(f)(2) in an amount according to proof but, in any event, in excess of $5,000,000, as well as pre-judgment and post-judgment interest thereon and distributing those amounts to the LWDA and the Aggrieved Employees as set forth in the PAGA statute.

12.      An award of reasonable attorney's fees and costs under Labor Code § 2699(g)(1), each in an amount according to proof.

13.     For an award to Plaintiffs of such other and further legal and equitable relief as the Court deems just and proper.

Dated October 12, 2016                      SEBASTIAN MILLER LAW, P.C.


By:   */s/ Sebastian L. Miller*
      Sebastian L. Miller
      Attorneys for Plaintiffs ANNETTE BRUCE,
      BRYAN AUSTIN, DEREK STEWART,
      FRANK GONZALES, MIGUEL HERRERA,
      AND RAYMOND RAYA, on behalf of
      themselves and others similarly situated as
      well as in a representative capacity on behalf
      of the State of California

CLASS ACTION COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF RELATED TO
VIOLATIONS OF THE ADEA AND FEHA; REPRESENTATIVE ACTION UNDER PAGA

1

**<u>DEMAND FOR JURY TRIAL</u>**

2
Plaintiffs hereby request trial by jury on all such causes of action as may be so tried.

3

4
Dated October 12, 2016                                    SEBASTIAN MILLER LAW, P.C.

5

6
By:    */s/ Sebastian L. Miller*

7
Sebastian L. Miller
Attorneys for Plaintiffs ANNETTE BRUCE,
BRYAN AUSTIN, DEREK STEWART,

8
FRANK GONZALES, MIGUEL HERRERA,
AND RAYMOND RAYA, on behalf of

9
themselves and others similarly situated as
well as in a representative capacity on behalf

10
of the State of California

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

CLASS ACTION COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF RELATED TO
VIOLATIONS OF THE ADEA AND FEHA; REPRESENTATIVE ACTION UNDER PAGA